[Cite as *State v. Johnson*, 2025-Ohio-3137.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,                                    :

    Plaintiff-Appellee,          : Case No.  23CA11

                v.                                    :

RICHARD JOHNSON,                        : DECISION AND
                         JUDGMENT ENTRY

                  Defendant-Appellant.        :

_____

APPEARANCES:

John M. Gonzales, Columbus, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, and
Adam J. King, Highland County Assistant Prosecuting Attorney,
Hillsboro, Ohio for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:8-27-25
ABELE, J.

{¶1} This appeal is pending before this court pursuant to our October 23, 2024 decision that granted the application of Richard Johnson, defendant below and appellant herein, to reopen his appeal pursuant to App.R. 26(B).  Appellant raises the following assignments of error:[1]

_____

[1] Appellant's brief contains 22 assignments of error.  The first 11 assignments of error assert that appellate counsel was ineffective for failing to raise 11 alleged errors.  Assignments of error 12 through 22 repeat those assignments of error without the assertion that appellate counsel was ineffective.  We have reproduced those assignments of error in the appendix to this

FIRST ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR TO THE FACT THERE WAS
INSUFFICIENT EVIDENCE TO CONVICT MR. JOHNSON
OF ENGAGING IN A PATTERN OF CORRUPT
ACTIVITY.  THE INEFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL IS A VIOLATION OF THE
APPELLANTS [SIC] RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL FOUND IN THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION."

SECOND ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR TO THE FACT THERE WERE JURY
INSTRUCTIONS THAT RELIEVED THE STATE OF
PROOF BEYOND A REASONABLE DOUBT THROUGH THE
INCORRECT READING OF FACTS RELATED TO THE
INDICTMENT.  THE INEFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL IS A VIOLATION OF THE
APPELLANTS [SIC] RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL FOUND IN THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION."

THIRD ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR TO THE FACT TRIAL COUNSEL
NEVER OBJECTED TO THE COURT GIVING
INSTRUCTION'S [SIC] THAT LESSENED THE STATES
[SIC] BURDEN OF PROOF.  THE INEFFECTIVE
ASSISTANCE OF APPELLATE COUNSEL IS A
VIOLATION OF THE APPELLANTS [SIC] RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUNSEL FOUND IN
THE SIXTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION."

FOURTH ASSIGNMENT OF ERROR:

---

opinion.  Due to the nature of this reopened appeal, we will
consider the first 11 assignments of error, and we summarily
overrule appellant's 12th through 22nd assignments of error.

"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR WHEN THE COURT TOLD THE
DEFENDANT HE HAD TO PROCEED PRO SE,
VIOLATING HIS RIGHT TO COUNSEL OF CHOICE.
THE INEFFECTIVE ASSISTANCE OF APPELLATE
COUNSEL IS A VIOLATION OF THE APPELLANTS
[SIC] RIGHT TO THE EFFECTIVE ASSISTANCE OF
COUNSEL FOUND IN THE SIXTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES
CONSTITUTION."

FIFTH ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE
FAILED TO ASSIGN ERROR TO THE FACT THE TRIAL
JUDGE PROJECTED BIAS.  THE INEFFECTIVE
ASSISTANCE OF APPELLATE COUNSEL IS A
VIOLATION OF THE APPELLANTS [SIC] RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUNSEL FOUND IN
THE SIXTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION."

SIXTH ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE
FAILED TO ASSIGN ERROR TO THE FACT THERE WAS
GOVERNMENT INTERFERENCE.  THE INEFFECTIVE
ASSISTANCE OF APPELLATE COUNSEL IS A
VIOLATION OF THE APPELLANTS [SIC] RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUNSEL FOUND IN
THE SIXTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION."

SEVENTH ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR TO THE FACT THE TRIAL JUDGE
COMPROMISED THE AUTONOMY RIGHT OF THE
DEFENDANT.  THE INEFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL IS A VIOLATION OF THE
APPELLANTS [SIC] RIGHT TO THE EFFECTIVE
ASSISTANCE OF COUNSEL FOUND IN THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION."

EIGHTH ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE IN NOT
ASSIGNING ERROR TO THE FACT THE TRIAL COURT
ABUSED ITS DISCRETION IN ADVISING THE
DEFENDANT.  THE INEFFECTIVE ASSISTANCE OF
APPELLATE COUNSEL IS A VIOLATION OF THE
APPELLANTS [SIC] RIGHT TO THE EFFECTIVE OF
COUNSEL FOUND IN THE SIXTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES
CONSTITUTION."

NINTH ASSIGNMENT OF ERROR:
"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR TO THE FACT THERE WAS
INSUFFICIENT EVIDENCE TO CONVICT MR. JOHNSON
OF COUNTS 9, 10 AND 11.  THE INEFFECTIVE
ASSISTANCE OF APPELLATE COUNSEL IS A
VIOLATION OF THE APPELLANTS [SIC] RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUNSEL FOUND IN
THE SIXTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION."

TENTH ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR TO THE FACT THE TRIAL COURT
FAILED TO GRANT THE MOTION FOR ACQUITTAL AS
THERE WAS INSUFFICIENT EVIDENCE TO CONVICT
MR. JOHNSON OF COUNT 1.  THE INEFFECTIVE
ASSISTANCE OF APPELLATE COUNSEL IS A
VIOLATION OF THE APPELLANTS [SIC] RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUNSEL FOUND IN
THE SIXTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION.

ELEVENTH ASSIGNMENT OF ERROR:

"APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
ASSIGNING ERROR TO THE FACT THE TRIAL COURT
FAILED TO GRANT THE MOTION FOR ACQUITTAL AS
THERE WAS INSUFFICIENT EVIDENCE TO CONVICT
MR. JOHNSON OF COUNTS 9, 10 AND 11.  THE
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
IS A VIOLATION OF THE APPELLANT'S RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUNSEL FOUND IN
THE SIXTH AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION."

{¶2} In the summer of 2022, a confidential informant (CI) advised law enforcement officers that he could purchase methamphetamine and marijuana from an individual known as "Scoots."  The CI stated that he knew where Scoots lived and indicated that he lived with his girlfriend, Kassie Brigner.

{¶3} The officers subsequently arranged two controlled buys. During the first controlled buy, officers heard a male identify himself as "Scoots" and tell the CI that "the marijuana was California Dream strand."  The CI left appellant's residence and debriefed with law enforcement officers.

{¶4} For the second controlled buy, the CI stated that he "could purchase a ball of meth from Scoots for $100," with a ball being 3.5 grams.  Law enforcement officers surveilled the purchase and observed appellant and Brigner inside the residence.  The CI gave appellant the money and left.  When the CI returned to the officers, he handed them a plastic bag that contained a crystal substance.

{¶5} Law enforcement officers subsequently obtained a search warrant for appellant's property and, upon its execution, discovered numerous items, including drugs, drug paraphernalia, firearms, currency, ledger books, a stolen pickup truck, chainsaws, and other tools.  Subsequent testing revealed that the drugs seized during the search of appellant's residence included the following:  (1) 167.08 grams of methamphetamine;

(2) 13.41 grams of a mixture containing methamphetamine, tramadol, 3-hydroxyphencyclidine (PCP), cocaine, para-fluorofentanyl, and fentanyl; (3) 1.56 grams of a mixture containing PCP, cocaine, tramadol, and fentanyl; (4) 1.63 grams of methamphetamine; (5) 31.85 grams of methamphetamine; (6) .12 grams of fentanyl and PCP; (7) .40 grams of a mixture containing PCP, tramadol, cocaine, para-fluorofentanyl, and fentanyl; (8) .47 grams of a mixture containing PCP, cocaine, tramadol, fentanyl, and para-fluorofentanyl; and (9) 3.93 grams of cocaine.

{¶6} On September 6, 2022, Highland County Sheriff's Deputy Dylan Quenniville responded to a report of a female dancing around the parking lot of the Rainsboro First Stop. When he arrived, the vehicle that he had been looking for, a white SUV, no longer was there, but he saw it stopped at a pizza shop. Deputy Quenniville approached the vehicle and identified appellant as the driver. Appellant's license had been suspended, so the deputy asked appellant to exit the vehicle. Appellant's female passenger, Kassie Brigner, had an active warrant, and she was arrested. Because neither appellant nor Brigner could drive the vehicle, the deputy requested that the vehicle be towed.

{¶7} A subsequent search of the vehicle uncovered, among other items, a bulletproof vest, ledger books, drug

paraphernalia, and a change purse that contained drugs.  The ledger books contained pages that listed names, drug amounts, and dollar amounts.  Later testing identified the drugs found in appellant's vehicle as (1) .17 grams of cocaine, (2) .44 grams of methamphetamine, (3) .17 grams of fentanyl mixed with other substances, (4) 2.82 grams of tramadol, fentanyl, and PCP, and (5) .86 grams of tramadol and fentanyl.

{¶8} In January 2023, a Highland County Grand Jury returned an indictment that charged appellant and Brigner with engaging in a pattern of corrupt activity and multiple drug-related offenses.  Appellant entered not-guilty pleas and exercised his right to a jury trial.  Brigner decided to enter into a plea agreement with the State that required her to testify at appellant's trial.

{¶9} At trial, the State presented evidence that appellant and Brigner had been together for approximately two years, and, during that time, had been selling drugs.  The State introduced into evidence the ledger books that appellant and Brigner used to keep a record of their drug transactions.  The ledger books show names or initials of the buyers, drug amounts, and dollar amounts.  The State also introduced testimony that the large quantity of methamphetamine discovered during the search of appellant's residence would have had a street value of more than $16,000.

{¶10} After the State finished its direct examination of its sixth witness, the court learned that appellant had "something" that he wanted to state "on the record." The court allowed appellant to elaborate. Appellant stated that, although he is "not a lawyer," he had some "points" that he believed his trial counsel "need[ed] to bring out," such as the "collection of evidence and stuff like that." The court asked appellant to explain, and he stated that, although the State had shown "all of these photos and stuff," he was not "in possession of that."

{¶11} The trial court informed appellant that the conclusion to be drawn from the evidence would be up to the jury and advised appellant that if he had "evidence to contradict" the State's evidence, then he should discuss it with his attorney. Appellant stated, "I hope that [trial counsel] represents me well when she gets to cross-examine." The court stated that it did not know "what [counsel] could have done" with any of the witnesses who had testified thus far. The court asked appellant whether he believed that trial counsel should have asked a question but did not. The court explained that it "didn't see it from the context of the testimony presented so far." Appellant stated, "Okay, we can continue but I've got it on record that I'm not happy right now."

{¶12} The trial court expressed that it did not expect appellant "to be happy," being in his position, and asked

appellant if he wished to proceed with trial counsel
representing him.  Appellant responded, "Yes."  The court
inquired whether "there [was] any other specific thing that
[appellant was] unhappy about."  Appellant stated, "No.  I'm
ready to proceed."

{¶13} The trial court then indicated that it had been
informed that appellant wanted to fire his attorney.  The court
stated that, if appellant fired his attorney, then he would need
to represent himself, which the court suggested would be "the
biggest mistake" appellant had "ever made in [his] life."  The
court pointed out that the trial was "about halfway or more past
the State's case" and that "changing horses in the middle of the
stream isn't usually a good idea."  Appellant replied, "Okay, I
won't fire her."

{¶14} The trial court next asked appellant whether he had
"anything else" that he wanted to say.  Appellant asked why the
CI was not present to testify.  The court stated, "I don't know
why.  I mean he's not necessary.  As I said, you're not charged
with that case.  But why would you want him here?  All he would
do I assume is say that he bought from you and he—"  Appellant
interjected, "I don't know, he's the one that started this whole
thing."  The court told appellant that the CI "would just be
another nail in your coffin" and asked appellant how the CI's
testimony would help him.  The court indicated that the CI would

testify, "I bought from this guy and I gave him this and that. Here's the dope that I turned over." The court asked appellant how that testimony would help his defense. Appellant stated that he wanted the CI to testify that appellant was "the one that handed [the CI] the dope."

{¶15} The trial court stated that appellant's decision to call the CI to testify was a decision that he should make in consultation with his attorney but that he "should leave the trial tactics to" his attorney. The court asked appellant's attorney whether she planned to call the CI, and she stated that she did not. The court asked her if it was "a tactical decision," and she stated that it was. The court asked appellant whether he had "[a]nything else" to discuss, and appellant stated, "No, sir. Continue on."

{¶16} After both sides had finished examining the State's sixth witness, the State called Brigner to testify. Brigner testified that she and appellant replenished drug supplies "[a]t least once or twice a week." She stated that the day before officers executed the July 12, 2022 search warrant, they had purchased 167 grams of methamphetamine. Brigner reported that she and appellant intended to use some of it and sell some of it for $200 to $300 an ounce. Brigner related that she helped appellant prepare drugs for sale and saw appellant prepare drugs for sale. She also indicated that she observed appellant accept

guns, tools, and equipment in exchange for drugs.

{¶17} Brigner also explained that she and appellant recorded their drug transactions in the books that officers had discovered during the search of appellant's residence and vehicle.  The prosecutor asked Brigner to explain one of the pages that showed dollar amounts that she, appellant, and two other individuals had contributed for a total of $3,500. Brigner stated that she had contributed $1,000, appellant contributed $1,500, and the other two contributed the remaining amount.  Brigner testified that they used the money to purchase fentanyl.  Brigner could not recall the date they purchased fentanyl, but stated that it occurred within the past year.  She further indicated that appellant had been paying $1,000 for an ounce of fentanyl.

{¶18} After the State finished presenting evidence, appellant asked the court to enter a judgment of acquittal, which the trial court overruled.

{¶19} On July 3, 2023, the jury found appellant guilty of all counts as charged in the indictment.  The trial court subsequently sentenced appellant to (1) serve a total 22-year, 9-month minimum prison sentence, to a total 27-year, 9-month maximum prison sentence, (2) pay a $20,000 fine, (3) pay costs, and (4) forfeit the property listed in the indictment.

{¶20} Following the trial court's judgment of conviction and sentence, appellant, with new appellate counsel, appealed the trial court's judgment.  We affirmed the trial court's judgment. *State v. Johnson*, 2024-Ohio-2058 (4th Dist.).

{¶21} Appellant later filed an application to reopen his appeal, which this court granted.  Pursuant to App.R. 26(B)(7) and (9), we now consider the merits of appellant's reopened appeal.

I

{¶22} App.R. 26(B)(7) states that a reopened appeal "shall proceed as on an initial appeal" and requires the parties to "address in their briefs the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency."  App.R. 26(B)(7); *see State v. Leyh*, 2022-Ohio-292, ¶ 22.

{¶23} App.R. 26(B)(9) guides an appellate court's review of a reopened appeal and provides as follows:

> If the court finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency, the court shall vacate its prior judgment and enter the appropriate judgment.  If the court does not so find, the court shall issue an order confirming its prior judgment.

App.R. 26(B)(9); *see Leyh* at ¶ 25.

{¶24} We initially note that, although appellant frames each of his first 11 assignments of error in terms of appellate

counsel's ineffectiveness, his brief does not specifically argue that counsel's failure to raise any of the assignments of error amounted to deficient performance or that any deficient performance prejudiced appellant.  While we question whether appellant's brief thus satisfies App.R. 26(B)(7), in the interest of justice, we nevertheless will consider the assignments of error.  *See State v. Carver*, 2023-Ohio-2839, ¶ 9 (4th Dist.); *State v. Mockbee*, 2015-Ohio-3469, ¶ 22-23 (4th Dist.).  *But see State v. Clark*, 2023-Ohio-4839 (9th Dist.), *conflict certified*, 2024-Ohio-2781.[2]

_____

[2] The Ohio Supreme Court identified the Ninth District's decision as being in conflict with *State v. Carver*, 2023-Ohio-2839 (4th Dist.), and *State v. Talley*, 2023-Ohio-883 (11th Dist.), and ordered the parties to brief the following issue:

> "In circumstances where an appellant's application for reconsideration is granted under App.R. 26(B)(5) on the grounds that there was a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal but appellant then fails to separately address in their brief the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency as required by App.R. 26(B)(7), can the appellate court presume appellant is arguing that appellate counsel was ineffective for failing to raise the arguments set forth in his new assignments of error, or must the court affirm its previous judgment due to appellant's failure to comply with the explicit requirements set forth in App.R. 26(B)(7)?"

*State v. Clark*, 2024-Ohio-2781.
  On April 22, 2025, the court heard oral arguments; as of this writing, no decision has been issued.

II

**{¶25}** We review claims of ineffective assistance of appellate counsel using the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Leyh*, 2022-Ohio-292, at ¶ 17; *Mockbee*, 2015-Ohio-3469, at ¶ 14 (4th Dist.). Reversal of a conviction for ineffective assistance of appellate counsel requires the defendant to show that (1) appellate counsel's performance was deficient, i.e., counsel was objectively unreasonable "in failing to find arguable issues to appeal," *Smith v. Robbins*, 528 U.S. 259, 285 (2000), and (2) a reasonable probability exists that, but for appellate counsel's deficient performance, the defendant "would have prevailed on his appeal." *Id.; see also Strickland*, 466 U.S. at 694; *Leyh* at ¶ 18.

**{¶26}** Counsel's performance is objectively unreasonable if "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285; *see State v. Simpson*, 2020-Ohio-6719, ¶ 22 ("Appellate counsel's performance was deficient if, considering all the circumstances, it fell below an objective standard of reasonableness under prevailing professional norms"). "A reasonable probability is a

probability sufficient to undermine confidence in the outcome."
*Strickland*, 466 U.S. at 694.

**{¶27}** When evaluating appellate counsel's performance,
courts "'appl[y] a heavy measure of deference to counsel's
judgments,'" *State v. Tenace*, 2006-Ohio-2987, ¶ 7, quoting
*Strickland*, 466 U.S. at 691, and "'indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance.'"  *Id.*, quoting *Strickland* at 689.
Additionally, courts must remain mindful that "appellate counsel
who files a merits brief need not (and should not) raise every
nonfrivolous claim, but rather may select from among them in
order to maximize the likelihood of success on appeal."  *Smith*,
528 U.S. at 288.  Indeed, the "process of 'winnowing out weaker
arguments on appeal and focusing on' those more likely to
prevail, far from being evidence of incompetence, is the
hallmark of effective appellate advocacy."  *Smith v. Murray*, 477
U.S. 527, 536 (1986), quoting *Jones v. Barnes* (1983), 463 U.S.
745, 751-752; *accord State v. Phillips*, 74 Ohio St.3d 72, 87
(1995).

**{¶28}** In the case sub judice, we do not believe that
appellate counsel's decision to forgo raising the 11 assignments
of error appellant subsequently identified was objectively
unreasonable.  First, we observe that several assignments of
error largely duplicate others.  For example, the first and

tenth assignments of error both challenge the sufficiency of the evidence to support appellant's conviction for engaging in a pattern of corrupt activity. The second and third assignments of error contend that the trial court erred when it instructed the jury. Appellant's fourth through eighth assignments of error assert various errors allegedly arising from the trial court's colloquy with appellant when the court learned that appellant indicated that he wanted to fire his trial counsel. Appellant's ninth and eleventh assignments of error challenge the sufficiency of the evidence to support's appellant's convictions relating to the drugs discovered inside a change purse that officers discovered in appellant's vehicle. We do not believe that appellate counsel acted unreasonably by omitting these 11 assignments of error and focusing instead on the one that counsel likely believed had a possibility of success.

{¶29} Furthermore, as we explain below, even if appellate counsel performed deficiently by failing to raise the 11 assignments of error, appellant cannot establish a reasonable probability that any deficient performance affected the outcome of his appeal.

III

{¶30} For ease of discussion, we consider appellant's first and tenth assignments of error together.

**{¶31}** In his first assignment of error, appellant asserts that appellate counsel was ineffective for failing to argue that the State did not present sufficient evidence that he engaged in a pattern of corrupt activity. He contends that the record does not contain any evidence to show that he committed two or more corrupt activities as defined in R.C. 2923.31(I)(2)(c). More specifically, appellant asserts that the State did not present sufficient evidence to establish that he committed more than one corrupt activity involving a value greater than $1,000.

**{¶32}** In his tenth assignment of error, appellant argues that appellate counsel was ineffective for failing to argue that the trial court erred by overruling his Crim.R. 29(A) motion for a judgment of acquittal regarding the offense of engaging in a pattern of corrupt activity. Appellant reiterates his argument that the record does not contain sufficient evidence to convict him of that offense.

A

**{¶33}** A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a

reasonable doubt.  *Id.* at syllabus.  The "critical inquiry" on appeal "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  (Emphasis in original.)  *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *e.g., State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).  Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."  *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶34} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution.  *E.g., State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993).  A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did.  *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶35} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."  *Tenace*, 2006-Ohio-2417, at ¶ 37.  A trial court must grant a Crim.R. 29(A)

motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses."  Crim.R. 29(A); *accord State v. Coker*, 2025-Ohio-2051, ¶ 13.

{¶36} In the case sub judice, we do not believe that appellate counsel's failure to raise these two assignments of error was objectively unreasonable, given that appellate counsel instead argued that appellant's conviction was against the manifest weight of the evidence.  On appellant's direct appeal, we determined that his conviction was not against the manifest weight of the evidence.  And, as we have stated in previous cases, a finding that a conviction is supported by the manifest weight of the evidence is "also dispositive of the issue of sufficiency and, consequently, a Crim.R. 29 claim."  *State v. Waller*, 2018-Ohio-2014, ¶ 30 (4th Dist.); *e.g., State v. McKinney*, 2024-Ohio-4642, ¶ 63 (4th Dist.) ("a determination that the weight of the evidence supports a conviction also is dispositive of an insufficient-evidence claim").

{¶37} Moreover, as we explain below, even if appellate counsel's decision not to argue that the State failed to present sufficient evidence of two corrupt activities, each involving a value greater than $1,000, was deficient, appellant cannot establish a reasonable probability that the outcome of his

appeal would have been different if appellate counsel had raised this assignment of error.

B

{¶38} R.C. 2923.32(A)(1) sets forth the offense of engaging in a pattern of corrupt activity. The statute provides as follows: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity . . . ."

{¶39} R.C. 2923.31(E) defines a "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

{¶40} R.C. 2923.31(I)(2)(c) defines "[c]orrupt activity" to include "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" certain offenses, including, as relevant here, (1) receiving stolen property, in violation of R.C. 2913.51, (2) aggravated drug trafficking, in violation of R.C. 2925.03, and (3) aggravated drug possession, in violation of R.C. 2925.11,

when the proceeds of the violation . . . or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds one thousand dollars, or any combination of violations described in [R.C. 2923.31(I)(2)(c)] when the total proceeds of the combination of violations, . . . or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds one thousand dollars[.]

{¶41} Thus, for conduct to constitute a "corrupt activity," "[t]he violation or combination of violations must involve proceeds, payments, claims, or value that exceeds the statutory threshold amount of $1,000" *State v. Bricher*, 2024-Ohio-394, ¶ 29 (3rd Dist.). For instance, drug trafficking constitutes a corrupt activity when "the total proceeds of a violation of that statute or a combination of violations of that statute" exceeds $1,000. *State v. Liggins*, 2018-Ohio-243, ¶ 23 (6th Dist.), citing R.C. 2923.31(I)(2)(c). Likewise, "receiving stolen property constitutes 'corrupt activity' when the proceeds, payments, or 'value' of the property in the aggregate exceeds $1,000." *State v. Rich*, 2018-Ohio-1225, ¶ 24 (2nd Dist.). Accordingly, "individual transactions can be aggregated to form a single corrupt activity." *State v. Kolle*, 2022-Ohio-4322, ¶ 38 (4th Dist.), citing *Liggins*, 2018-Ohio-243, at ¶ 23-24 (6th Dist.).

{¶42} Importantly, however, a conviction for engaging in a pattern of corrupt activity requires the State to produce evidence that the defendant engaged in "at least two corrupt

activities, where the value of each corrupt activity, i.e., the property illegally purchased, exceeds $1,000, for a total value of at least $2,000.02[.]" *State v. Burley*, 2020-Ohio-4603, ¶ 35 (6th Dist.); *accord Kolle*, 2022-Ohio-4322, at ¶ 38 (4th Dist.), quoting *Liggins*, 2018-Ohio-243, at ¶ 23 (6th Dist.) ("'at the minimum, the proceeds of [a] 'pattern of corrupt activity' must be at least $2,000.02, since the proceeds of each 'corrupt activity' must at least be $1,000.01'").

**{¶43}** In the case at bar, we do not believe that appellant can establish a reasonable probability that the outcome of his appeal would have been different if appellate counsel had challenged the sufficiency of the evidence to establish the monetary value of the corrupt activities. Contrary to appellant's belief, the State did present some evidence to establish that he committed more than one "corrupt activity." The record contains evidence that, during the search of appellant's residence, officers discovered a bag containing a little more than 167 grams of methamphetamine with a resale value of at least $16,000. The evidence thus supports a finding that appellant violated R.C. 2925.11(A) and that the value of the contraband exceeded $1,000.

**{¶44}** Moreover, appellant's codefendant testified that she and appellant sold a substantial quantity of drugs and recorded those transactions in ledger books. These books show page after

page of drug transactions that would have had a combined value of well-over $1,000. *See generally State v. Bricher*, 2024-Ohio-394, ¶ 34 (3rd Dist.) (given evidence that defendant sold "large quantities" of drugs, "a jury could easily conclude that the value of the contraband involved in those two separate violations of R.C. 2925.03 each exceeded $1,000."). The State thus presented sufficient evidence to allow a rational juror to conclude that appellant violated R.C. 2925.03 and that the value of the contraband exceeded $1,000.

**{¶45}** Additionally, the State presented evidence that appellant was in possession of stolen property, including a motor vehicle, in violation of R.C. 2913.51. Even though the State did not present direct testimony regarding the value of the motor vehicle, the State introduced a photograph of the vehicle (a 2006 Chevrolet Truck), and the jury rationally could have determined that the value of the motor vehicle exceeded $1,000.

**{¶46}** Considering all of the evidence and viewing it in a light most favorable to the prosecution, we conclude that a reasonable juror could have found beyond a reasonable doubt that appellant had participated in at least two incidents of corrupt activity that established a pattern of corrupt activity. Furthermore, even if we determined that the State could have presented better evidence to support appellant's convictions,

this determination would not alter the conclusion that the State presented sufficient evidence to allow any rational juror to find, beyond a reasonable doubt, the essential elements of the offenses. *See State v. Dent*, 2020-Ohio-6670, ¶ 16 (sufficiency inquiry does not ask "whether the [S]tate presented the *best* evidence" but "whether the evidence presented, *when viewed in a light most favorable to the prosecution*, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt" [emphasis in original]).

{¶47} Thus, had appellate counsel challenged the sufficiency of the evidence on direct appeal, the argument would not have had a reasonable probability of success. Consequently, appellate counsel was not ineffective for failing to raise this issue on direct appeal.

{¶48} Accordingly, based upon the foregoing reasons, we overrule appellant's first and tenth assignments of error.

IV

{¶49} For ease of discussion, we combine our review of appellant's second and third assignments of error.

{¶50} In his second assignment of error, appellant contends that appellate counsel was ineffective for failing to argue that the jury instructions "relieved the State of proof beyond a reasonable doubt through the incorrect reading of facts related to the indictment." Appellant asserts that the engaging-in-a-

pattern-of-corrupt-activity statute required the State to prove that the activities were "not so closely related to any other act of corrupt activity connected in time and place that they constitute one event." He states that the trial court, however, incorrectly advised the jury that "counts 2, 3, 4, 5, and 7 occurred on different dates as alleged in the indictment." Appellant contends that the trial court's statement is incorrect because the indictment contains only one date, July 12, 2022. He claims that the trial court's instruction thus reduced the State's burden of proof.

{¶51} In his third assignment of error, appellant asserts that appellate counsel was ineffective for failing to argue that trial counsel failed to object to the trial court's instruction "that lessened the States [sic] burden of proof."

{¶52} To support his argument, appellant cites *Middleton v. McNeil*, 541 U.S. 433 (2004), and *Cool v. United States*, 409 U.S. 100, 102-03 (1972). In *Middleton*, the Court stated:

> In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. *See Sandstrom v. Montana,* 442 U.S. 510, 520-521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). "'[A]

> single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California,* 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (quoting *Cupp*, *supra*, at 146-147, 94 S.Ct. 396). If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, *supra*, at 72, 112 S.Ct. 475 (quoting *Boyde, supra*, at 380, 110 S.Ct. 1190).

*Id.* at 437; *see also Kokitka v. Ford Motor Co.,* 73 Ohio St.3d 89, 93 (1995), quoting *Becker v. Lake Cty. Mem. Hosp. W.,* 53 Ohio St.3d 202, 208 (1990) ("In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.'").

**{¶53}** In *Cool*, the Court determined that a trial court may not instruct a jury to, in effect, "ignore defense testimony unless it believes beyond a reasonable doubt that the testimony is true." *Id.* at 100. In that case, the defendant offered an accomplice's testimony in her defense. The trial court instructed the jury that an accomplice's testimony is "open to suspicion" and further advised the jury that, if it was convinced, "beyond a reasonable doubt," that the accomplice's testimony was true, then the jury "should give it the same effect as you would to a witness not in any respect implicated in the alleged crime." *Id.* at 102. The Court concluded that

the trial court's instruction "place[d] an improper burden on the defense and allow[ed] the jury to convict despite its failure to find guilt beyond a reasonable doubt. *Id.* at 102–03. The Court stated that a jury instruction cannot have "the effect of substantially reducing the Government's burden of proof," because "the Constitution requires proof of guilt beyond a reasonable doubt." *Id.* at 104.

**{¶54}** In the case at bar, we do not agree with appellant that the trial court's jury instruction, viewed in the context of the overall charge, failed to give effect to the requirement that the State prove every element of the offense beyond a reasonable doubt or otherwise reduced the State's burden of proof. The trial court instructed the jury that, to find appellant guilty of engaging in a pattern of corrupt activity, it "must find beyond a reasonable doubt that on or about the period of January 1, 2019, continuing through January 1, 2023," appellant, "while being employed by or associated with any enterprise, did conduct, participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity."

**{¶55}** The trial court continued by setting forth the essential elements of the offense and stated that one of the elements was that "the offense occurred in Highland County, on or about the period within the dates alleged in the indictment."

With respect to "the element of time," the court advised the jury that the State need not prove that each "offense was committed on the exact day as charged in the indictment. It is sufficient to prove that the offense took place on a date reasonably near the date claimed."

{¶56} The trial court defined "pattern of corrupt activity" as "one or more incidents of corrupt activity related to the affairs of the same enterprise, are not isolated and are not so closely related to each other, connected in time and place, that they constitute a single event." The court continued to explain that "[a] finding of [a] pattern of corrupt activity requires proof of at least two incidents of corrupt activity by [appellant] within six years of each other."

{¶57} The trial court next instructed the jury that "corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in or soliciting, coercing or intimidating another person to engage in any of the following conduct," when "the total proceeds of those combination of violations or value of the contraband or other property illegally sold in the combination of violations exceeds $1,000": (1) "Count 2, aggravated trafficking in methamphetamine"; (2) "Count 3, aggravated possession of methamphetamine"; (3) "Count 4, aggravated trafficking in drugs"; (4) "Count 5, aggravated possession of drugs"; or (5) "Count 7, receiving stolen

property."  The court further instructed the jury that counts two and three of the indictment were "alternative counts" and that counts three and four likewise were "alternative counts." The court explained:

> Only if you find the State proved [appellant] guilty by proof beyond a reasonable doubt of two or more of the violations alleged in count 2, 3, 4, 5, and 7, that occurred on different dates as alleged in the indictment, those findings alone are not, are insufficient to establish a pattern of corrupt activity. The State must prove beyond a reasonable doubt that at least one of the violations was related to the affairs in the same enterprise alleged and not so closely related to any other act of corrupt activity connected in time and place that they constitute one event.

{¶58} Reading the trial court's jury instructions in light of the overall charge fails to support appellant's argument that the trial court reduced the State's burden of proof.  Even though the indictment contains the same date, July 12, 2022, for counts 2, 3, 4, 5, and 7, the evidence presented at trial showed that July 12, 2022, was the date that officers executed the search warrant upon appellant's residence and discovered evidence indicating that appellant had been engaged in a pattern of corrupt activity by trafficking and possessing drugs and by possessing stolen property.  The evidence did not suggest that July 12, 2022, was the only date upon which appellant trafficked or possessed drugs or possessed stolen property.  Indeed, appellant's codefendant testified that the two had been engaged in drug trafficking for about two years.

{¶59} Additionally, even if the trial court suggested that the indictment alleged that counts 2, 3, 4, 5, and 7 occurred on different dates, this statement must be read in context of the court's entire charge. The entirety of the court's charge shows that the court correctly advised the jury that, to find appellant guilty, it must find that the State proved "beyond a reasonable doubt that at least one of the violations was related to the affairs in the same enterprise alleged and not so closely related to any other act of corrupt activity connected in time and place that they constitute one event." The court further instructed the jury that the time frame to consider for the offense of engaging in a pattern of corrupt activity was the period of January 1, 2019, through January 1, 2023, and that "[a] finding of [a] pattern of corrupt activity requires proof of at least two incidents of corrupt activity by Defendant within six years of each other." The court also advised the jury that the State need not "prove the offense was committed on the exact day as charged in the indictment."

{¶60} Furthermore, any ambiguity, inconsistency, or deficiency that may exist in the court's jury instructions does not rise to the level of a due process violation. Nothing in the instructions suggests that an "'ailing instruction . . . so infected the entire trial that the resulting conviction violates

due process.'" *Estelle,* 502 U.S. at 72, quoting *Cupp*, 414 U.S. at 147.

{¶61} Given the foregoing, appellate counsel could have quite reasonably determined that raising an assignment of error to challenge the trial court's jury instructions, or trial counsel's failure to object to the jury instructions, would have been pointless. Consequently, appellate counsel was not ineffective for failing to raise these two assignments of error.

{¶62} Accordingly, based upon the foregoing reasons, we overrule appellant's second and third assignments of error.

V

{¶63} In his fourth assignment of error, appellant asserts that appellate counsel was ineffective for failing to argue that the trial court deprived him of his right to counsel of his choice when it informed appellant that, if he chose to fire his current trial counsel, he would need "to proceed pro se."

{¶64} The Sixth Amendment right to counsel includes "the right to select and be represented by one's preferred attorney." *Wheat v. United States*, 486 U.S. 153, 159 (1988). This right does not guarantee, however, "that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* Instead, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant." *Id.* Thus, the Sixth Amendment right to counsel "does not guarantee that a criminal

defendant will be represented by a particular attorney." *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989).

{¶65} Moreover, "the right to counsel of choice is circumscribed in several important respects.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006), quoting *Wheat*, 486 U.S. at 159. Trial courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." (Citations omitted.) *Id.; accord State v. Harmon*, 2005-Ohio-1974, ¶ 32 (4th Dist.), quoting *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) (the "'right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court'"); *see Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel"). Additionally, trial courts have an "'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Gonzalez-Lopez*, 548 U.S. at 152, quoting *Wheat*, 486 U.S. at 160; *accord State v. Hurst*, 2024-Ohio-5544, ¶ 25 (4th Dist.).

> Factors to consider in deciding whether a trial court
> erred in denying a defendant's motion to substitute
> counsel include "the timeliness of the motion; the
> adequacy of the court's inquiry into the defendant's
> complaint; and whether the conflict between the attorney
> and client was so great that it resulted in a total lack
> of communication preventing an adequate defense."
> *United States v. Jennings* (C.A.6, 1996), 83 F.3d 145,
> 148. In addition, courts should "balanc[e] . . . the
> accused's right to counsel of his choice and the public's
> interest in the prompt and efficient administration of
> justice." *Id.* Decisions relating to the substitution
> of counsel are within the sound discretion of the trial
> court. *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1700, 100
> L.Ed.2d at 152.

*State v. Jones*, 91 Ohio St.3d 335, 342-43 (2001).

**{¶66}** In the case sub judice, we do not believe that the trial court violated appellant's Sixth Amendment right to select and be represented by counsel of his choice. First, appellant did not unequivocally state that he wanted to replace his trial counsel with substitute counsel. Once the trial court learned that appellant had expressed some dissatisfaction with his trial counsel, the trial court fully engaged in a discussion with appellant to ascertain the reasons for his disenchantment. After that inquiry, appellant agreed to proceed with his current trial counsel. Moreover, appellant did not indicate that he already had identified substitute counsel willing and able to represent him.

**{¶67}** Additionally, appellant's request was untimely. *See State v. Cobb*, 2007-Ohio-1885, ¶ 15 (4th Dist.) ("A defendant's request to substitute retained counsel of his choice must be

timely and not disrupt the trial proceedings.).  Appellant did not raise any issue regarding trial counsel's representation until after the State had finished questioning the sixth witness.  *See State v. Nicholson*, 2007-Ohio-6653, ¶ 14 (8th Dist.) (trial court did not err by denying defendant's request to discharge retained counsel when defendant raised the request right before opening statements); *Cobb*, 2007-Ohio-1885, at ¶ 15, 16 (4th Dist.) (trial court did not err by denying defendant's request to continue the trial to allow him to obtain private counsel in place of appointed counsel because defendant requested continuance on the date of trial and continuing the trial "would have inconvenienced the witnesses, opposing counsel, and the court"); *see also State v. Thompkins*, 2024-Ohio-4927, ¶ 25-26 (4th Dist.).  Thus, assuming, arguendo, that appellant made an unequivocal request for a continuance to allow him to obtain substitute counsel, the "trial court could have reasonably decided that appellant's untimely request for a continuance did not outweigh the court's authority to control its own docket."  *Cobb*, 2007-Ohio-1885, at ¶ 17 (4th Dist.).

**{¶68}** Consequently, appellant cannot establish that this assignment of error would have had a reasonable probability of success if appellate counsel had raised it on direct appeal.  He therefore cannot demonstrate that appellate counsel failed to

provide the effective assistance of appellate counsel by omitting this assignment of error.

**{¶69}** Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

VI

**{¶70}** In his fifth assignment of error, appellant asserts that appellate counsel was ineffective for failing to argue that the trial court judge displayed bias.  Appellant points to a comment that the court made about appellant's request that the confidential informant (CI) testify:  The court stated that the CI "would just be another nail in [appellant's] coffin" and would not help appellant.

**{¶71}** "[A] criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar,* 2002-Ohio-2128, ¶ 34

> Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."

*State v. Dean*, 2010-Ohio-5070, ¶ 48, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus; *accord State v. Weaver*, 2022-Ohio-4371, ¶ 59. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or

of prior proceedings" and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases" ordinarily do not demonstrate bias, unless those judicial opinions or remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *accord Weaver* at ¶ 59.

**{¶72}** Furthermore, judges are "presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 2003-Ohio-5489, ¶ 5. Consequently, "[a]llegations that are based solely on innuendo and speculation are insufficient to establish bias or prejudice." *In re Disqualification of Pokorny*, 2013-Ohio-915, ¶ 6. We additionally observe that "'[b]ias against a party is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party.'" *Culp v. Olukoga*, 2013-Ohio-5211, ¶ 55 (4th Dist.), quoting *Frank Novak & Sons, Inc. v. Brantley, Inc.*, 2001 WL 303716 (8th Dist. Mar. 29, 2001).

**{¶73}** In the case at bar, we perceive nothing in the record to indicate that the trial judge exhibited any level of bias sufficient to call the fairness of the trial into question. Instead, during an extended colloquy with appellant regarding his malcontent, appellant suggested that trial counsel should

call the CI to testify at trial.  The court pointed out the obvious fact that the CI's testimony would be damaging to appellant, i.e., if appellant called the CI to testify, the CI would confirm that the photographic evidence that the State admitted into evidence depicted appellant selling drugs to the CI during the controlled buy.  The trial court also advised appellant that the decision to call the CI was his choice to make in consultation with his trial counsel.  Appellant's trial counsel indicated that the decision not to call the CI was a tactical decision.  Nothing indicates that the trial court displayed bias against appellant so as to call the fairness of the trial into question.

{¶74} Thus, appellant cannot establish a reasonable probability that the outcome of his appeal would have been different if appellate counsel had raised this assignment of error.  He therefore cannot demonstrate that appellate counsel failed to provide the effective assistance of appellate counsel by forgoing this assignment of error.

{¶75} Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.

VII

{¶76} In his sixth assignment of error, appellant asserts that appellate counsel was ineffective for failing to argue that "there was government interference."  He contends that the trial

court interfered with his choice to call the CI to testify as a witness and that "[a]ny conduct from the trial judge that is targeted to the defendant and is designed to persuade him to refrain from, or exercise a right is outrageous government conduct."

{¶77} To support his argument, appellant cites a sentence from *United States v. Marshank*, 777 F.Supp. 1507, 1519 (N.D.Cal. 1991), that reads as follows: "A Fifth Amendment due process violation may occur when government interference in an attorney-client relationship results in ineffective assistance of counsel or when the government engages in outrageous misconduct." Appellant's quotation, however, appears to have been taken out of context. In *Marshank*, "[t]he government collaborated with [the defendant]'s attorney to build a case against him, to effect his arrest, and to ensure that he would cooperate with the government rather than contest the charges against him." *Id.* at 1519. In the case sub judice, none of these facts exist.

{¶78} *Marshank* also observed that a court may "dismiss an indictment when 'the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *Id.* at 1523, quoting *United States v. Russell,* 411 U.S. 423, 431–32 (1973). The court further noted that "[t]o constitute a Fifth Amendment violation under *Russell,* the

government conduct at issue must be fundamentally unfair and '"shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth Amendment.'" *Id.*, quoting *Russell,* 411 U.S. at 432, quoting *Kinsella v. United States,* 361 U.S. 234, 246, (1960). The *Marshank* court found this standard met because "the government actively collaborated with [the defendant's attorney] to build a case against the defendant, showing a complete lack of respect for the constitutional rights of the defendant and [the defendant's attorney]'s other clients and an utter disregard for the government's ethical obligations." *Id.* at 1524. Additionally, the "government colluded with [the defendant's attorney] to obtain an indictment against the defendant, to arrest the defendant, to ensure that [the defendant's attorney] would represent the defendant despite his obvious conflict of interest, and to guarantee the defendant's cooperation with the government." *Id.*

{¶79} In the case at bar, none of these facts exist. Moreover, nothing shows that the trial court otherwise engaged in any conduct that is fundamentally unfair or shocking to the universal sense of justice.

{¶80} Furthermore, as we noted in our discussion of appellant's fifth assignment of error, appellant's trial counsel indicated that the decision not to call the CI to testify was a tactical decision.

{¶81} Consequently, appellant cannot establish a reasonable probability that the outcome of his appeal would have been different if appellate counsel had raised this assignment of error. He therefore cannot demonstrate that appellate counsel failed to provide the effective assistance of appellate counsel by omitting this assignment of error.

{¶82} Accordingly, based upon the foregoing reasons, we overrule appellant's sixth assignment of error.

VIII

{¶83} For ease of discussion, we have combined our review of appellant's seventh and eighth assignments of error.

{¶84} In his seventh assignment of error, appellant asserts that appellate counsel was ineffective for failing to argue that the trial court compromised his "autonomy right." Appellant contends that "a defendant must be allowed to make his own choices about the proper way to protect his own liberty," *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017), and that the trial court violated that right when it advised him regarding the firing of his trial counsel, his decision to represent himself, and his desire to call the CI to testify as a witness.

{¶85} In his eighth assignment of error, appellant contends that appellate counsel was ineffective for failing to argue that the trial court abused its discretion by advising appellant.

**{¶86}** We believe that our disposition of appellant's fourth, fifth, and sixth assignments of error fully addresses the arguments that appellant raises in his seventh and eighth assignments of error. First, as we stated in our discussion of appellant's fourth assignment of error, the trial court did not violate appellant's right to counsel of his choice. After the trial court explained that it would not continue the trial to allow appellant to retain new counsel, appellant agreed to proceed with his current counsel.

**{¶87}** To the extent that appellant asserts that the trial court violated his right to represent himself, appellant never asked the court that he be permitted to represent himself. *See State v. Dean*, 2010-Ohio-5070, ¶ 68 ("The assertion of the right to self-representation must be clear and unequivocal.").

**{¶88}** Furthermore, the trial court did not compromise appellant's right to present a defense when it pointed out the obvious fact that the CI's testimony likely would be damaging. Plus, appellant's trial counsel confirmed that the decision not to call the CI was a tactical decision.

**{¶89}** Consequently, appellant cannot establish a reasonable probability that the outcome of his appeal would have been different if appellate counsel had raised these arguments on direct appeal. He therefore cannot demonstrate that appellate

counsel failed to provide the effective assistance of appellate counsel by forgoing these assignments of error.

{¶90} Accordingly, based upon the foregoing reasons, we overrule appellant's seventh and eighth assignments of error.

IX

{¶91} For ease of discussion, we combine our review of appellant's ninth and eleventh assignments of error.

{¶92} In his ninth assignment of error, appellant asserts that appellate counsel was ineffective for failing to argue that the record does not contain sufficient evidence to support his convictions for counts 9, 10, and 11—the drug possession charges that arose out of the discovery of drugs inside a change purse located on the front passenger floorboard of the vehicle appellant had been driving.  Appellant agrees that he was the driver of the vehicle in which the drugs were discovered, but he asserts that the State did not present any testimony to establish "who the drugs belonged to."  Appellant asserts that "[a] purse is something so closely identified with a person that if it is with her, or in close proximity at the time the officer stops her, then it is in her possession."  *State v. Kuhn*, 2023-Ohio-2740, ¶ 20 (5th Dist.).  Appellant states that the change purse belonged to his codefendant.  Appellant thus claims that he did not possess the drugs found in the change purse and further argues that "[o]nly one person can possess an item."

{¶93} In his eleventh assignment of error, appellant argues that appellate counsel was ineffective for failing to argue that the trial court erred by overruling his motion for acquittal regarding counts 9, 10, and 11.

{¶94} R.C. 2925.11(A) sets forth the essential elements of the offense of possession of drugs.  The statute provides as follows:  "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶95} "Possession" is generally defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  R.C. 2925.01(K).  "Possession . . . may be individual or joint, actual or constructive."  *State v. Wolery*, 46 Ohio St.2d 316, 332 (1976); *State v. Fry*, 2004-Ohio-5747, ¶ 39 (4th Dist.).

{¶96} "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'"  *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.), quoting *Fry,* 2004-Ohio-5747, at ¶ 39 (4th Dist.).  "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession."  *State v. Hankerson*, 70 Ohio St.2d 87, (1982), syllabus; *State v.*

*Brown*, 2009-Ohio-5390, ¶ 19 (4th Dist.).  For constructive

possession to exist, the State must show that the defendant was

conscious of the object's presence.  *Hankerson*, 70 Ohio St.2d at

91; *Kingsland* at ¶ 13; *accord State v. Huckleberry*, 2008-Ohio-

1007, ¶ 34 (4th Dist.); *State v. Harrington*, 2006-Ohio-4388, ¶

15 (4th Dist.); *Criss v. Kent*, 867 F.2d 259, 263 (6th Cir. 1988)

("Ohio law is clear that a suspect can be in 'constructive

possession' of . . . property without having actual physical

possession of the property if it is located within premises

under the suspect's control and he was conscious of its

presence.").

{¶97} Both dominion and control, and whether a person was

conscious of the object's presence, may be established through

circumstantial evidence alone.  *E.g., Brown*, 2009-Ohio-5390, at

¶ 19 (4th Dist.); *see, e.g., State v. Jenks*, 61 Ohio St.3d 259

(1991), paragraph one of the syllabus ("[c]ircumstantial

evidence and direct evidence inherently possess the same

probative value"); *State v. Davis,* 2018-Ohio-4268, ¶ 50 (3d

Dist.) (prosecution may establish constructive possession by

circumstantial evidence alone).  "Circumstantial evidence is

defined as '[t]estimony not based on actual personal knowledge

or observation of the facts in controversy, but of other facts

from which deductions are drawn, showing indirectly the facts

sought to be proved. . . .' "  *State v. Nicely*, 39 Ohio St.3d

147, 150 (1988), quoting *Black's Law Dictionary* 221 (5th
Ed.1979).

**{¶98}** Furthermore, to establish constructive possession, the
State need not show that the defendant had "[e]xclusive control"
over the contraband.  *State v. Tyler*, 2013-Ohio-5242, ¶ 24 (8th
Dist.), citing *State v. Howard*, 2005-Ohio-4007, ¶ 15 (8th
Dist.), citing *In re Farr*, 1993 WL 464632, *6 (10th Dist. Nov.
9, 1993) (nothing in R.C. 2925.11 or 2925.01 states that illegal
drugs must be in the sole or exclusive possession of accused at
time of offense).  Instead, "'[a]ll that is required for
constructive possession is some measure of dominion or control
over the drugs in question, beyond mere access to them.'"
*Howard* at ¶ 15, quoting *Farr* at *6.  Thus, simply because others
may have access to the contraband, in addition to the defendant,
does not mean that the defendant "could not exercise dominion or
control over the drugs."  *Tyler*, 2013-Ohio-5242, at ¶ 24 (8th
Dist.); *accord State v. Walker*, 2016-Ohio-3185, ¶ 75 (10th
Dist.).  In fact, "multiple persons may have joint constructive
possession of an object."  *State v. Russell*, 2022-Ohio-1746, ¶
43 (4th Dist.); *see State v. Hodges*, 2025-Ohio-2050, ¶ 40 (4th
Dist.) ("two or more people can have constructive possession of
the same object" and "the fact that [the defendant's] fellow
passengers might also have had something to do with the drugs

does not preclude a finding that appellant constructively possessed them").

{¶99} Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. *Fry*, 2004-Ohio-5747, at ¶ 40 (4th Dist.). Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession. *Kingsland*, 2008-Ohio-4148, at ¶ 13 (4th Dist.).

{¶100} In the present case, we believe that the State presented evidence that would allow a reasonable juror to find, beyond a reasonable doubt, that appellant constructively possessed the drugs found in the change purse. Officers found the change purse on the front passenger floorboard of the vehicle that appellant had been driving. As the driver of the vehicle, appellant would have been located close enough to the change purse to be able to exercise some measure of dominion or control over the drugs. Additionally, appellant's codefendant, who also had been inside the vehicle, stated that both she and appellant were drug users. Based upon all of the circumstantial evidence, a rational juror could have determined, beyond a reasonable doubt, that appellant constructively possessed the drugs found in the change purse.

{¶101} We again note that the question is not whether the State introduced the best evidence but whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Dent*, 2020-Ohio-6670, at ¶ 16.  Thus, even if we were to conclude that the State could have presented better evidence to support appellant's convictions, that conclusion would not alter our decision that the State presented adequate evidence to allow any rational trier of fact to find, beyond a reasonable doubt, the essential elements of the offenses.

{¶102} Consequently, appellant cannot establish a reasonable probability that the outcome of his appeal would have been different if appellate counsel had raised these arguments on direct appeal.  He therefore cannot demonstrate that appellate counsel failed to provide the effective assistance of appellate counsel by omitting these assignments of error.

{¶103} Accordingly, based upon the foregoing reasons, we overrule appellant's ninth and eleventh assignments of error.

X

{¶104} We summarily overrule appellant's 12th through 22nd assignments of error and confirm our prior judgment.

JUDGMENT CONFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment in the direct appeal be confirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

APPENDIX

TWELFTH ASSIGNMENT OF ERROR:

"MR. JOHNSON WAS CONVICTED OF ENGAGING IN A
PATTERN OF CORRUPT ACTIVITY WHEN THE
EVIDENCE WAS INSUFFICIENT TO SUPPORT THE
CONVICTION.  THIS IS A VIOLATION OF MR.
JOHNSON'S SIXTH [A]MENDMENT RIGHT TO A FAIR
TRIAL AND HIS FOURTEENTH [A]MENDMENT RIGHT
TO DUE PROCESS OF LAW FOUND IN THE UNITED
STATES CONSTITUTION AS WELL AS COMPARABLE
PROVISIONS OF THE OHIO CONSTITUTION."

THIRTEENTH ASSIGNMENT OF ERROR:

"THERE WERE JURY INSTRUCTIONS THAT RELIEVED
THE STATE OF PROOF BEYOND A REASONABLE DOUBT
THROUGH AN INCORRECT READING OF THE FACTS
RELATED TO THE INDICTMENT.  THIS IS A
VIOLATION OF MR. JOHNSON'S RIGHT TO A FAIR
TRIAL AND DUE PROCESS OF LAW FOUND IN THE
SIXTH AND FOURTEENTH [A]MENDMENTS TO THE
UNITED STATES CONSTITUTION AS WELL AS
COMPARABLE PROVISIONS OF THE OHIO
CONSTITUTION."

FOURTEENTH ASSIGNMENT OF ERROR:

"TRIAL COUNSEL WAS INEFFECTIVE WHEN SHE
FAILED TO OBJECT TO THE [C]OURT'S JURY
INSTRUCTIONS THAT LESSENED THE STATE'S
BURDEN OF PROOF.  THIS IS A VIOLATION OF MR.
JOHNSON'S RIGHT TO THE EFFECTIVE ASSISTANCE
OF COUNSEL FOUND IN THE SIXTH [A]MENDMENT TO
THE UNITED STATES CONSTITUTION AS WELL AS
COMPARABLE PROVISIONS OF THE OHIO
CONSTITUTION."

FIFTEENTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED MR. JOHNSON'S
RIGHT TO COUNSEL OF CHOICE.  THIS IS A
VIOLATION OF MR. JOHNSON'S RIGHT TO A FAIR
TRIAL AND DUE PROCESS FOUND IN THE SIXTH AND

FOURTEENTH [A]MENDMENTS TO THE UNITED STATES
CONSTITUTION AS WELL AS COMPARABLE
PROVISIONS OF THE OHIO CONSTITUTION."

SIXTEENTH ASSIGNMENT OF ERROR:

   "THE TRIAL COURT PROJECTED BIAS WHICH IS A
VIOLATION OF MR. JOHNSON'S RIGHT TO A FAIR
TRIAL AND HIS RIGHT TO DUE PROCESS FOUND IN
THE SIXTH AND FOURTEENTH [A]MENDMENTS TO THE
UNITED STATES CONSTITUTION AS WELL AS
COMPARABLE PROVISIONS OF THE OHIO
CONSTITUTION."

SEVENTEENTH ASSIGNMENT OF ERROR:

   "THERE WAS GOVERNMENTAL INTERFERENCE IN MR.
JOHNSON'S CASE.  THIS IS A VIOLATION OF HIS
RIGHT TO A FAIR TRIAL AND DUE PROCESS THAT
ARE FOUND IN THE SIXTH AND FOURTEENTH
[A]MENDMENTS TO THE UNITED STATES
CONSTITUTION AS WELL AS COMPARABLE
PROVISIONS OF THE OHIO CONSTITUTION."

EIGHTEENTH ASSIGNMENT OF ERROR:

   "THE TRIAL COURT COMPROMISED THE AUTONOMY
RIGHT OF MR. JOHNSON.  THIS IS A VIOLATION
OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS
FOUND IN THE SIXTH AND FOURTEENTH
[A]MENDMENTS TO THE UNITED STATES
CONSTITUTION AS WELL AS COMPARABLE
PROVISIONS OF THE OHIO CONSTITUTION."

NINETEENTH ASSIGNMENT OF ERROR:

   "THE TRIAL COURT ABUSED ITS DISCRETION BY
ADVISING MR. JOHNSON.  THIS TYPE OF ABUSE OF
DISCRETION IS A VIOLATION OF MR. JOHNSON'S
RIGHT TO A FAIR TRIAL AND DUE PROCESS FOUND
IN THE SIXTH AND FOURTEENTH [A]MENDMENTS TO
THE UNITED STATES CONSTITUTION AS WELL AS
COMPARABLE PROVISIONS OF THE OHIO
CONSTITUTION."

TWENTIETH ASSIGNMENT OF ERROR:

"MR. JOHNSON WAS CONVICTED OF COUNTS 9, 10 AND 11 WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.  THIS IS A VIOLATION OF MR. JOHNSON'S SIXTH [A]MENDMENT RIGHT TO A FAIR TRIAL AND HIS FOURTEENTH [A]MENDMENT RIGHT TO DUE PROCESS OF LAW FOUND IN THE UNITED STATES CONSTITUTION AS WELL AS COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."

TWENTY-FIRST ASSIGNMENT OF ERROR:

 "THE TRIAL COURT FAILED TO GRANT THE MOTION FOR ACQUITTAL AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT MR. JOHNSON OF COUNT 1, ENGAGING IN A PATTERN OF CORRUPT ACTIVITY. THIS IS A VIOLATION OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS FOUND IN THE SIXTH AND FOURTEENTH [A]MENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."

TWENTY-SECOND ASSIGNMENT OF ERROR:

 "THE TRIAL COURT FAILED TO GRANT THE MOTION FOR ACQUITTAL FOR COUNTS 9, 10 AND 11 WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.  THIS IS A VIOLATION OF MR. JOHNSON'S SIXTH [A]MENDMENT RIGHT TO A FAIR TRIAL AND HIS FOURTEENTH [A]MENDMENT RIGHT TO DUE PROCESS OF LAW FOUND IN THE UNITED STATES CONSTITUTION AS WELL AS COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION."