[Cite as *State v. Stevens*, 2026-Ohio-956.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 24CA6 |
| | : | |
| v. | : | <u>NUNC PRO TUNC[1]</u> |
| | : | <u>DECISION AND JUDGMENT</u> |
| GERALD D. STEVENS, | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES:</u>

Palmer Legal Defense, Stephen E. Palmer, Columbus, Ohio, for appellant.

Dave Yost, Ohio Attorney General, Andrea Boyd, Assistant Attorney General, Columbus, Ohio, for appellee.

_____

Smith, P. J.

{¶1} Appellant, Gerald D. Stevens, appeals the May 20, 2024 judgment of the Hocking County Court of Common Pleas denying his petition for postconviction relief without a hearing. In 2021, appellant was convicted of two counts of burglary and one count of grand theft. In the present appeal, appellant raises two assignments of error. First, he contends that the trial court erroneously applied an incorrect legal standard and abused

---

[1] The judgment entry is amended to reflect Dave Yost as the Ohio Attorney General.

its discretion when it denied his petition without a hearing under R.C.

2953.21(D).  Second, he contends that the trial court erred when it denied his

petition on the merits without conducting a hearing.  In support of these

arguments, appellant directs this court to the Supreme Court of Ohio's

decision in *State v. Bunch,* 2022-Ohio-4723.

{¶2} For the reasons which follow, we find that the trial

court did not use incorrect standards of review and, consequently, did not

abuse its discretion when it denied Stevens' petition and did not conduct a

hearing.  We overrule both assignments of error and affirm the trial court's

judgment.

Factual and Procedural Background

{¶3} A lengthy recitation of the underlying facts and procedural

history is set forth in *State v. Stevens*, 2023-3280, at ¶¶ 2-55, "*Stevens I.*"

On June 10, 2021, appellant was convicted of Burglary, R.C. 2911.12;

Burglary, R.C. 2911.12(A)(3); and Grand Theft when the Property is a

Firearm or Dangerous Ordnance, R.C. 2913.02.  The burglary counts also

contained firearm specifications.  On August 16, 2021, the trial court

journalized its Judgment Entry of Sentence and imposed an aggregate prison

term of six years and six months.  On October 8, 2021, the trial court filed a

Nunc Pro Tunc Judgment Entry of Sentence.[2]  Appellant timely appealed his convictions.

{¶4} On February 3, 2023, while the direct appeal was pending, appellant filed a Petition for Postconviction Relief.  On September 14, 2023, we affirmed appellant's convictions in the direct appeal.  *See Stevens I.*[3]  On May 20, 2024, the trial court denied appellant's postconviction petition without a hearing.

{¶5} The indictment against appellant arose from criminal activities which occurred at the residence of appellant's cousin, Robbie Davis, on or about December 26 and 27, 2013.  The State's theory of the case was that appellant, as "mastermind," sent a "crew" of criminals, namely Brandon Allen, Shane Adkins, and Kenny Wells, to Davis's house for the purpose of stealing Davis's money and guns from a safe.  A convicted felon, Jeremy Myers, was the star witness at trial who testified to the above material facts.

{¶6} Myers testified he was present in appellant's garage when appellant originated the plan and discussed it with the crew of participants.

---

[2]The Nunc Pro Tunc Judgment Entry of Sentence appears to have been filed in order to correct the misidentification of Count 4 as Count 3 on the first and second pages of the first Judgment Entry of Sentence.

[3] The  Supreme Court of Ohio declined jurisdiction for review of our decision .  *See State v. Stevens*, 2024-Ohio-1228.  On September 25, 2023, appellant filed an Application for Reconsideration.  This application was denied on December 14, 2023.  Pursuant to App.R. 26(B), appellant filed an application to reopen his appeal on December 13, 2023.  On May 23, 2024, this court denied the application to reopen the appeal.  The Supreme Court again declined jurisdiction.  *See State v. Stevens*, 2024-Ohio-3313.

In the postconviction petition, appellant's claims related to Myers' testimony. Appellant argued that his constitutional rights were violated by prosecutorial misconduct that occurred when the State knowingly used Myers' allegedly false testimony. Appellant also argued that the false testimony constituted witness misconduct. Finally, appellant argued that defense counsel should have cross-examined Myers as to the contradictory testimony. Appellant asserted that counsel's failure to do so constituted deficient performance and thus, ineffective assistance of trial counsel. Appellant's postconviction petition was supported by the affidavit of his then-counsel, Attorney Harris.

{¶7} Appellant raises two assignments of error. Because his assignments of error are inextricably intertwined, we shall address them jointly.

## ASSIGNMENTS OF ERROR

I.   THE TRIAL COURT ABUSED ITS DISCRETION, APPLIED INCORRECT LEGAL STANDARDS, AND ERRONEOUSLY DENIED STEVENS' PETITION FOR POSTCONVICTION RELIEF WITHOUT CONDUCTING A HEARING IN VIOLATION OF R.C. 2953.21(D) AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

II.     THE TRIAL COURT ERRED BY DENYING STEVENS' PETITION FOR POSTCONVICTION RELIEF ON THE MERITS WITHOUT A HEARING, THEREBY DEPRIVING HIM OF HIS RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

*Postconviction Relief Principles*

{¶8} Postconviction relief, although designed to remedy alleged constitutional violations, operates as a civil collateral attack on a criminal judgment - - not as a second appeal. *See State v. Morrison,* 2025-Ohio-4937, at ¶ 19 (4th Dist.); *State v. Howard*, 2025-Ohio-4718, at ¶ 27 (5th Dist.); *State v. Calhoun*, 86 Ohio St.3d 279,281 (1999); *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). Consequently, a postconviction petition does not afford the petitioner a renewed opportunity to relitigate his or her conviction, nor does it automatically entitle one to an evidentiary hearing. *See State v. Jackson*, 64 Ohio St.2d 107, 110 (1980); *Morrison, supra*, at ¶ 18.

Standard of Review – Postconviction Relief

{¶9} " 'We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner

a hearing, under an abuse-of-discretion standard.' " *State v. Vanpernis*, 2025-Ohio-365, at ¶ 14 (4th Dist.), quoting *State v. Hatton*, 2022-Ohio-3991, ¶ 38. To find abuse of discretion, the decision must have been unreasonable, arbitrary, or unconscionable. *See Vanpernis*, at ¶ 28. An unreasonable decision is unsupported by a sound reasoning process. *Id.* An arbitrary decision is made without regard to the facts or circumstances. *Id*. " 'An unconscionable decision "affronts the sense of justice, decency, or reasonableness." ' " *Id*., quoting *State v. Kyles*, 2024-Ohio-998, ¶ 22 (12th Dist.). However, whether a trial court has used the proper legal standard of review is a question of law, which we review de novo. *See Vanpernis, supra,* at ¶ 14; *Brand v. Ogle,* 2020-Ohio-3219, ¶ 9 (4th Dist.) ("The issue whether the trial court applied the correct legal standard is a question of law we review de novo.").

<u>Postconviction Review of Ineffective Assistance of Counsel Claims</u>

{¶10} Here, the two-part analysis set forth in *Strickland v. Washington,* 466 U.S. 668 (1984) is to be applied; *State v. Lytle*, 48 Ohio St.2d 391 (1976); *State v. Bradley*, 42 Ohio St.3d 136 (1989). Appellant must therefore prove that: 1) counsel's performance fell below an objective standard of reasonable representation; and 2) there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would

have been different. *Id. See also State v. Johnson,* 2025-Ohio-3137, at ¶ 25 (4th Dist.); *Monaco,* at ¶ 24. Regarding the prejudice prong, the defendant must prove that there is a "reasonable probability" that counsel's deficiency affected the outcome of the defendant's proceedings. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted). *Bunch* at ¶ 26.

<u>Right to Evidentiary Hearing in Postconviction Proceedings</u>

{¶11} Appellant argues that the trial court misapplied the standard for reviewing a postconviction relief petition as established by the Supreme Court of Ohio in *State v. Bunch*, 2022-Ohio-4723. Appellant argues that the trial court's conclusion that "the submitted record on this petition does not contain sufficient operative facts establishing substantive grounds for relief" was premature because a hearing was necessary and required under *Bunch.* The *Bunch* decision emphasized that it was addressing the standard to be used for determining whether a hearing should be held on a postconviction petition, not the standard for ultimately granting relief on the petition. *Id.* at ¶ 22. *See State v. Monaco*, 2024-Ohio-535, at ¶ 21 (5th Dist.).

{¶12} Under the postconviction statutes, a trial court must, before granting an evidentiary hearing, "determine whether there are substantive grounds for relief." *Bunch* at ¶ 23, citing R.C. 2953.21(D). "If the petition 'is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief.' " *Bunch,* citing *State v. Milanovich*, 42 Ohio St.2d 46 (1975).

{¶13} The *Bunch* court further explained that in determining whether there are substantive grounds for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings. Then, "[i]f the record does not on its face disprove the petitioner's claim," the court is required to "proceed to a prompt hearing on the issues." *Id*. at ¶ 24, citing R.C. 2953.21(F).

{¶14} A trial court may dismiss a petition for postconviction relief without holding an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. *See State v. Adams*, 2017-Ohio-519, at ¶ 14 (4th Dist.) (Additional citations omitted.)

Timeliness

{¶15} R.C. 2953.21(A)(2) provides that a petitioner must file a postconviction relief petition no later than 365 days after the date on which the trial transcript was filed in the court of appeals in the direct appeal of the judgment of conviction. *See also State v. Peeples,* 2025-Ohio-4938, at ¶ 20.

Application of Res Judicata in Postconviction Relief Proceedings

{¶16} Even when a postconviction petition is timely, res judicata may foreclose relief. In *State v. Blanton,* 2022-Ohio-3985, Supreme Court of Ohio explained as follows:

> The doctrine of res judicata bars someone from raising a claim that could have been raised and litigated in a prior proceeding. *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). So a court reviewing a postconviction relief petition generally may not decide a claim that could have been presented at trial and raised on direct appeal. *Id*. at 180, 226 N.E.2d 104.

*Blanton,* at ¶ 2.

Application of Res Judicata in Postconviction Relief
Proceedings Raising Ineffective Assistance of Counsel
Claims

{¶17} The *Blanton* court also explained that "[t]here's a twist when it comes to claims of ineffective assistance of counsel." *Id.* The Court continued:

> We have held that res judicata does not bar a postconviction ineffective-assistance-of-counsel claim when either (1) the petitioner has the same attorney at trial and on appeal or (2) he must rely on evidence outside the

> trial record to establish his claim for relief. *State v. Cole*, 2 Ohio St.3d 112, 113-114, 443 N.E.2d 169 (1982). The converse is that when the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction claim is barred.

*Blanton,* 2022-Ohio-3985, ¶ 2; *see also State v. Shamblin*, 2025-Ohio-2760, at ¶ 26. Further, in *Shamblin*, this court recently explained that merely providing evidence outside the record is not sufficient to entitle a petitioner to a hearing. We explained that for the exception to the application of the doctrine of res judicata to apply on postconviction claims, " 'the evidence must be genuinely relevant, and it must materially advance a petitioner's claim that there has been a denial or infringement of his or her constitutional rights.' " *State v. Gregory*, 2024-Ohio-5420, ¶ 54 (6th Dist.), quoting *State v. Lawson*, 103 Ohio App.3d 307, 315 (12th Dist.). And, to secure a hearing, a petitioner " 'must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner].' " *Blanton, supra*, at ¶ 31, quoting *Cole* at 114, 443 N.E.2d 169.

{¶18} The State of Ohio asserts that appellant's claims of prosecutorial misconduct, witness misconduct, and ineffective assistance of counsel—all relating to Myers' allegedly false testimony—could have been

brought within the direct appeal. We observe that appellant was not represented in the direct appeal by the same attorney that represented him in the trial court proceedings.

Timeliness of Appellant's Postconviction Petition

{¶19} As a threshold matter, we must address the State's assertion that the postconviction petition was untimely. In this case, the court record was filed on November 9, 2021. The State's position is that appellant's petition is untimely because it was filed on February 3, 2023, over 365 days (15 months) later.

{¶20} Here is a relevant timeline of events gleaned, in part, from the online docket[4] of appellant's direct appeal, 21CA9:

| | |
|---|---|
| June 10, 2021 | Stevens is found guilty on three counts. |
| July 7, 2021 | Attorney Brian Jones gives notice of substitution of trial counsel, replacing Attorney Shamansky. |
| August 12, 2021 | Sentencing hearing held. Notice of appeal filed. Attorney Jones also filed a Statement, Praecipe, And Notice to Court Reporter, requesting a *Transcript of the proceedings* that were heard on *June 7-9, 2021* and August 12, 2021. |
| August 16, 2021 | Judgment entry of sentence filed. |
| October 8, 2021 | Nunc pro tunc judgment entry of sentence filed. |

---

[4] " 'An appellate court may properly take judicial notice of publicly accessible records, including court documents and dockets, in deciding appeals.' " *Ward v. Ross*, 2025-Ohio-442, ¶ 56 (4th Dist.) quoting *State v. Kempton*, 2018-Ohio-928,¶ 17 (4th Dist.).

Nov. 9, 2021          Notice of Transmission of Record filed. (The Record *does not* include a transcript of Proceedings.)

January 28, 2022      Attorney Jones' Motion to Withdraw as Counsel.

January 31, 2022      Notice of Substitution of Counsel, Attorney Harris.

February 1, 2022      *Trial Transcripts* (Documents numbered 208, 209, and 210)  filed in the Hocking  County Common Pleas.

February 7, 2022      Motion to Supplement the Record.  Attorney Harris indicates although the record was Transmitted on November 9, 2021, the trial transcript was not prepared and filed at that time.

February 7, 2022      Clerk's entry encircled "Supplement to Record" states that the supplement was filed on February 7, 2022, and that it *does* include a transcript of proceedings.[5]

March 2, 2022         Stevens' brief prepared by Attorney Harris is Filed in the direct appeal.

February 3, 2023      Stevens' Petition for Postconviction Relief filed.

{¶21} As demonstrated above, appellant timely appealed.  After trial and prior to sentencing, he obtained new counsel.  New counsel, Attorney Jones requested a transcript of proceedings, including those held on June 7-9, 2021, the dates of appellant's jury trial.  For an unknown reason, on

---

[5] Exhibits, also, were later ordered submitted.

November 9, 2021, the clerk filed a notice of transmission that did not include the trial transcripts.

{¶22} Attorney Jones withdrew from the case in January 2022. On January 31, 2022, Attorney Harris was substituted as new appellate counsel. Within approximately eight days, Attorney Harris apparently reviewed the record, noted the missing trial transcripts, and filed a motion to supplement the record on February 7, 2022. On the same date, the clerk filed a notice that the transcripts had been submitted.

{¶23} In *State v. Everette,* 2011-Ohio-2856, the Supreme Court of Ohio, in considering a related issue, defined the term "trial transcript" with reference to App.R. 9 and used the term interchangeably with the term "transcript of proceedings" in holding that the filing of the certified written (rather than videotaped) transcript triggers the statutory time. *Id*. at ¶ 20, 27. Where the record is supplemented with a transcript that was objectively necessary for inclusion in the appellate record, the time for filing the petition for postconviction relief begins to run from the filing of the supplemental transcript. *See State v. Marcum*, 2023-Ohio-4058, at ¶ 16 (2d Dist.); *State v. Deaton,* 2019-Ohio-2128, at ¶ 14-15 (2d Dist.).

{¶24} Appellant's trial was three days long and it involved multiple witnesses and exhibits. We find that the trial transcripts in this case were

objectively necessary for inclusion in the appellate record.  Nothing in this case suggests that the filing of the motion to supplement the record was for the purpose of extending the filing time of appellant's petition.[6]  Instead, it appears that for an unknown reason, the trial transcripts were not included.

{¶25} Post-trial, appellant changed attorneys twice.  It also appears that Attorney Harris, who prepared the direct appellate brief and the postconviction petition, expediently reviewed the file and took the necessary steps to obtain the trial transcripts.  According to our calculations, the postconviction petition filed February 3, 2023, was filed upon the 361st day after the filing of the necessary trial transcripts on February 7, 2022.  Thus, we conclude that the postconviction petition was filed in a timely manner.

<u>Substantive Claims - Prosecutorial and Witness Misconduct</u>

{¶26} In his petition, appellant's proposed substantive grounds for relief were prosecutorial misconduct and witness misconduct relating to the allegedly false testimony key witness Jeremy Myers gave at trial.  Myers testified about a conversation he overheard a few days before Christmas 2013.  *Stevens I* at ¶ 12.  Myers claimed he was present in appellant's garage

---

[6] *See State v. Barker,* 2016-Ohio-8476, at ¶ 13, distinguishing legitimate purposes for filing supplemental requests as opposed to requesting irrelevant transcripts for the purposes of extending the time for filing. *See State v. Chavis-Tucker,* 2006-Ohio-3105, at ¶ 8 (1st Dist.); *State v. Durham*, 2012-Ohio-4165, at ¶ 6 (8th Dist.); and *State v. Rice,* 2011-Ohio-3746, at ¶32 (11th Dist.).

and overheard appellant in a conversation with others, planning to break into

Robbie Davis's house.  Specifically, Myers testified:

> Well I was closer towards the back of the garage but I
> overheard the conversation.  I guess he's been having
> problems with this guy for awhile.  Talking about [Rob
> Davis].  He was going to be gone.  There's a safe in there
> The money's in there and he had a bunch of guns and
> [appellant] wanted the guns.

*Id*. at ¶ 13.

{¶27} In the petition, appellant pointed out that Myers was

interviewed by law enforcement on December 6, 2019.  In the interview,

Myers was questioned about the "garage conversation" and claimed he did

**not** overhear the conversation between appellant and others about a break-in

at Davis's house.  The interview discrepancies are briefly summarized as

follows:

> A: [Appellant] came down in a blue truck, alright.
> Brandon, Kenny and Shane was there.
>
> Q: What did, uh, what did he say to them, then?
>
> A: I don't know exactly what they said.  They're in
> the front of the garage, I'm in the back.   They left;
> Brandon was asking me if I want to go hit a lick. I
> said, "well what?"  He said, "a house."  I said,
> "no."
>
> Q: What did [appellant] say?  You seen [appellant]
> come down, you heard him talking.

A:      I'm in the back of the garage. (Yeah) Have you
        ever heard air compressors around? (Yeah) You
        can hear someone?

Q:      … You didn't hear anything [appellant] said?
        Other than Brandon asking you do you want to go
        hit a lick?

A:      No…

Q:      So you have no idea what [appellant] said?

A:      I don't have no, none at all. But I know what
        Brandon came back and said.

{¶28} Appellant claims that the trial court's decision denying his petition without a hearing barely addressed the substance of the petition and provided little factual and legal analysis. We disagree. In resolving appellant's postconviction petition, the trial court found:

> [A]pproximately a year and a half earlier, Myers had been arrested and questioned about the burglary and told investigators that he had not overheard defendant and Allen's conversation but had heard details of the conversation from Allen shortly thereafter…[D]efendant's materials do not establish that Myers' trial testimony was false, only that it was inconsistent with his statement given a year and a half earlier during custodial interrogation. (Citation omitted.) Defendant's materials provide no basis for concluding Myers' trial testimony was actually false and known by the State to be false. Accordingly, the record for purposes of this petition does not show prosecutorial misconduct. Nor does the Court find the record supports witness misconduct. Defendant knew of Myers' custodial statements before trial. The discrepancies between Myers'

custodial interrogation and trial testimony simply placed his credibility at issue.

{¶29} Based upon our review of Myers' recorded statement and his trial testimony, however, we find the doctrine of res judicata applied to bar the claims of prosecutorial misconduct and witness misconduct. The docket reflects that on May 19, 2020, the prosecutor filed State's First Supplemental Discovery Response. On Page 1 of the pleading, at Number 3, the State discloses as follows: All recorded, written or transcribed statements by witnesses…On Page 2 of the pleading, the State disclosed in boldface as follows:

> **An index of all files is included.**
>
> **Files are conspicuously marked "COUNSEL ONLY." "COUNSEL ONLY," as ordered by the Court, precludes counsel from allowing defendant to view the materials. In addition, "COUNSEL ONLY," as ordered by the Court, prevents counsel from disclosing the identity of any witnesses disclosed in the materials to the defendant.**

{¶30} On August 12, 2020, the State filed its second supplemental disclosure. On Page 1 at Paragraph 3, the State disclosed: "A witness list will be supplemented. The State of Ohio reserves the right to call as a witness any person included in the provided discovery materials…" Thereafter, Jeremy Myers was subpoenaed as a witness in March 2021.

{¶31} Appellant's trial counsel was provided Myers' custodial interview in discovery. Appellant and his trial counsel sat through Jeremy Myers' lengthy testimony on the second day of trial. Appellant's postconviction claims of prosecutorial misconduct and witness misconduct could have been litigated based upon the trial record. We conclude that appellate counsel could have raised any arguments related to the alleged false testimony on direct appeal. *See State v. Craig*, 2022-Ohio 2976, at ¶ 22 (6th Dist.) (where appellant admitted that he learned of grounds for mistrial during the week of his trial, issue could have been raised on direct appeal and was barred by res judicata).

{¶32} We also observe that despite the fact that Stevens' direct appeal was pending at the time he filed his petition for postconviction relief on February 3, 2023, the trial court was permitted to apply res judicata to dismiss appellant's petition. R.C. 2953.21(F). *See also State v. Carver,* 2022-Ohio-2653, ¶ 41 (4th Dist.) ("We now hold that a defendant's pending direct appeal does not bar application of the doctrine of res judicata to a defendant's postconviction petition.").

{¶33} Even if res judicata did not apply, the trial court did not abuse its discretion in finding that appellant failed to establish that the trial testimony was actually false or that the State knew that the testimony was

false.  Nothing in the record and nothing in the affidavit attached in support of the petition substantiates these claims.[7]

### Substantive Claim - Ineffective Assistance of Trial Counsel

{¶34} As to the alleged ineffective assistance, the trial court commented that counsel's choice not to impeach with the recorded statement was debatable.  However, the trial court found:

> In the case at bar, trial counsel thoroughly cross-examined and impeached Myers, effectively emphasizing to the jury Myers' admitted extensive history of theft and property crimes (burglary, receiving stolen property, breaking and entering, theft), his propensity to lie, and his potential bias occasioned by his plea agreement with the State in connection with the criminal matters for which defendant was charged and convicted.  The record on this petition does not support the conclusion either that defense counsel was ineffective or that any deficiency in his performance was prejudicial, i.e., that the result of the trial would have been different but for counsel's failure to impeach Myers regarding the garage conversation.

{¶35} Again, we find this claim to be barred by res judicata.  As previously observed, appellant had different trial counsel and appellate counsel for his direct appeal.  In *Carver,* we explained that in order to overcome the barrier of res judicata, a petition must include "competent,

---

[7] Appellant's postconviction petition is supported only by the affidavit of his counsel at the time of the direct appeal and petition, Attorney Harris.  Ms. Harris avers only that she reviewed Myers' trial testimony and recorded statement and sets forth the discrepancies.  Ms. Harris asserts that had trial counsel impeached Myers' a reasonable probability exists that the jury would have "questioned the credibility of his remaining testimony."  The affidavit does not set forth any facts outside the record.

relevant, and material evidence outside of the record established in the trial court that was not in existence or available for use at trial." *Id.* at 21, citing *State v. Jackson*, 2002-Ohio-3330, ¶ 45 (10th Dist.). " 'Such evidence "must meet some threshold standard of cogency; otherwise it would be too easy to defeat [the doctrine of res judicata] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." ' " *Carver* at ¶ 21, quoting *State v. Cunningham,* 2004-Ohio-5892, at ¶ 16 (3d Dist.), in turn quoting *State v. Lawson*, 103 Ohio App.3d 307 (12th Dist. 1995); *State v. Seal,* 2014-Ohio-5415, ¶ 13 (4th Dist.). While appellant's counsel in the current appeal asserts that the petition relied on facts outside the record, counsel's affidavit attached to appellant's postconviction petition does not indicate that the 2019 custodial interview of Myers was somehow outside of the record.[8]  Therefore, we find that res judicata applies to bar appellant's ineffective assistance claim.

{¶36} Even if res judicata did not apply, we find that the trial court did not abuse its discretion in declining to find deficient performance that affected the outcome of appellant's trial.  We have reviewed Myers'

---

[8] Neither does counsel assert in the affidavit or the appellate brief that the pretrial discovery orders somehow prevented the issue from being raised in the direct appeal.

statement.  In sum, the interviewer begins by telling Myers that the grand jury had indicted him for a burglary occurring in 2013 and that the Ohio Attorney General's Office would be prosecuting the case.  Myers immediately responds by asking "Was it [appellant]?"  Myers stated he had "nothing to do with it" and repeatedly denied involvement.  Myers attempted to steer the conversation to his current status, advising officers he had a job and was "doing good now."

{¶37} The interviewer specifically asked what appellant knew about the burglary.  Myers replied "I don't know, I mean I really don't know nothing about it…All I knew is - - it was supposed to be [appellant's] family.  [Appellant] knew they was out of town."  In our view, trial counsel's choice not to impeach with the prior inconsistent statement appears to be a calculated, strategic choice.  In *State v. Vulgamore,* 2021-Ohio-3147, this court observed:

> "Generally, '[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.' " *State v. Guysinger,* 2017-Ohio-1167, at ¶ 17 (4th Dist.), quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 146. Moreover, " '[a]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v. Dorsey*, 2005-Ohio-2334, ¶ 22 (10th Dist.), quoting *In re Brooks,* 2004-Ohio-3887, ¶ 40

(10th Dist.); *see also State v. Allah*, 2015-Ohio-5060, ¶ 23
(4th Dist.).

*Vulgamore,* at ¶ 47.

{¶38} The transcription of the interview demonstrates potentially damaging statements about appellant that trial counsel may not have wanted to risk being heard by the jurors.  Myers was emphatic that [appellant] was "right there at the garage" and "right there at the garage when he told the boys what to do when they was all talking about it."

{¶39} Based on our review of Myers' recorded statement as compared to his trial testimony, we find the trial court did not abuse its discretion in finding that trial counsel did not perform deficiently by choosing not to impeach Myers' with the recorded statement.  Even if trial counsel had impeached with the statement, we are mindful that jurors are instructed that they are free to believe some, all, or none of any witness's testimony.  *See Grimes v. Grimes,* 2012-Ohio-3562, at ¶ 28 (4th Dist.).  It is mere speculation to conclude that had trial counsel impeached Myers with his earlier statement that the jurors would have somehow reached a different result.

Conclusion

{¶40} The *Bunch* court explained that in determining whether there are substantive grounds for relief, the trial court must consider the entirety of

the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings. Then, "[i]f the record does not on its face disprove the petitioner's claim," the court is required to "proceed to a prompt hearing on the issues." *Id.* at ¶ 24, citing R.C. 2953.21(F). To obtain a hearing on his postconviction petition, an appellant does not need to definitively establish trial counsel's deficiency or resulting prejudice. *See Bunch*, at ¶ 27. Rather, the postconviction petition must be sufficient on its face to raise an issue as to whether appellant was deprived of the effective assistance of counsel, and appellant's claim must depend on factual allegations that cannot be determined by examining the record of his trial. *Id*.

{¶41} In its decision, the trial court found that "the submitted record on this petition does not contain sufficient operative facts establishing substantive grounds for relief." Based upon our review, we find the trial court did not use incorrect standards of review when analyzing appellant's petition and denying a hearing. We agree that the petition and supporting affidavit do not demonstrate sufficient operative facts on its face establishing substantive grounds for relief. Thus, the trial court was not required to conduct an evidentiary hearing.

{¶42} However, we also find that res judicata applied to bar consideration of appellant's postconviction claims. Appellate courts may affirm a trial court's judgment for reasons that differ from those used by the trial court. *See State v. Soto*, 2025-Ohio-4517, at Fn. 7 (3d Dist.); *State v. Ross,* 2024-Ohio-6076, at 26 (7th Dist.); *State v. Carver*, *supra*, at ¶ 58 (where trial court did not abuse its discretion by dismissing postconviction petition without conducting an evidentiary hearing, alternative basis that res judicata applied to bar claims raised in Carver's postconviction petition). Accordingly, appellant's first and second assignments of error are without merit and are hereby overruled. The judgment of the Hocking County Court of Common Pleas is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**